IN UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

**FILED**
FEB - 8 2012
WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By_____ Deputy Clerk

(1) TERRY HESTER,

Plaintiff,

v.

(2) CERTAIN UNDERWRITERS OF LLOYD'S,

and

(3) FARMERS INSURANCE COMPANY, INC.

Defendants.

Case No. **CIV 12-057-SPS**

## COMPLAINT

COMES NOW, Plaintiff, Terry Hester, for his cause of action against Defendants, Certain Underwriters of Lloyd's and Farmers Insurance Company, Inc., alleges and states as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Terry Hester is a citizen of the State of Texas.

2. Defendant Certain Underwriters of Lloyd's ("Lloyd's") is a foreign, for-profit corporation engaging in the business of insurance in the State of Oklahoma.

3. Defendant Farmers Insurance Company, Inc. ("Farmers") is a foreign for-profit corporation engaging in the business of insurance in the State of Oklahoma.

*consent + waiver forms provided*

4. The amount in controversy in this matter exceeds $75,000 exclusive of interest and costs.

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391, inasmuch as a substantial part of the acts and omissions giving rise to this matter occurred in the Eastern District of Oklahoma.

## FACTS OF CASE

7. On December 5th, 2009, Plaintiff purchased from Defendant Lloyd's a contract of insurance providing $168,000 in coverage for certain rare and authentic memorabilia owned by Plaintiff.

8. Defendant Lloyd's issued Policy No. HC0011685-1002 to Plaintiff, which covered Plaintiff's collectibles and memorabilia as scheduled items to the insurance policy.

9. On February 2nd, 2010, the items insured under Policy No. HC0011685-1002, were listed and valued as follows:

| | | |
|---|---|---|
| a. | 1813 Iron Cross First Class | $5,000.00 |
| b. | 1813 Iron Cross First Class Felt Core | $5,000.00 |
| c. | Condor Legion Tank Badge 8 @ $5,400.00 each | $43,200.00 |
| d. | Gold Close Combat Clasp Presentation Type Cased | $24,000.00 |
| e. | Knights Cross with LDO Case | $12,000.00 |
| f. | Nazi Standard Dutchland | $15,000.00 |

10. On March 23rd, 2010, the items insured under Policy No. HC0011685-1002, were amended to include the following:

| | | |
|---|---|---|
| a. | Cased German Cross in Gold with Diamonds | $109,500.00 |
| b. | Pilot Observer with Diamonds First Type | $95,000.00 |
| c. | Sub War Badge with Diamonds | $27,000.00 |

11. On June 25th, 2010, the items insured under Policy No. HC0011685-1002, were amended to include the following:

| | | |
|---|---|---|
| a. | Case for Pilot Observer with Diamonds | $6,700.00 |
| b. | Knights Cross Cased 800 | $11,200.00 |
| c. | Knights Crossed Cased 800 MM (65) | $11,900.00 |
| d. | Oakleaves to KC MM (21) | $12,000.00 |
| e. | Paratrooper Badge .800 INF. BTL. | $27,000.00 |

12. Between the dates of March 23, 2010, and June 25, 2010, a representative, agent, or employee of Defendant Lloyd's contacted Plaintiff and advised that Plaintiff was "underinsured" based on the value of items listed under Policy No. HC0011685-1002. In other words, the value of the items listed in the Policy exceeded the insurance limits.

13. The representative, agent, or employee of Defendant Lloyd's further advised Plaintiff to increase the coverage limit for the items insured under Policy No. HC0011685-1002.

14. On or about June 25, 2010, Plaintiff agreed to increase the limits of insurance coverage provided under Lloyd's Policy No. HC0011685-1002 from $300,000 to $400,000.

15. Despite ample opportunity to do so, Defendant Lloyd's did not engage in any effort to determine the authenticity of the scheduled items for which Lloyd's provided insurance coverage.

16. Instead, Defendant Lloyd's accepted premiums from Plaintiff for coverage of Plaintiff's rare and authentic collectibles, including the increased premiums resulting from the increase in coverage limits on or about March 23, 2010, and June 25, 2010.

17. The policy covering Plaintiff's collectibles was an excess coverage policy providing for coverage up to $400,000.00 above any amounts paid by any primary insurance obtained by Plaintiff.

18. On or about September 24, 2009, Plaintiff obtained a policy of insurance, policy number 94086-68-98 from Defendant Farmers.

19. The Farmers policy provided coverage for loss of personal property at a limit of $111,100.00 for losses sustained during the policy period of September 24, 2009 through September 24, 2010.

20. The Farmers policy contained a provision that disclaimed coverage for any personal property separately described and specifically insured in the Farmers policy or any other policy; this clause is otherwise known as an escape clause.

21. On July 25th, 2010, Plaintiff sustained a theft of many items from his home, including the aforementioned rare and authentic collectibles.

22. As a result of the theft, Plaintiff contacted Defendant Lloyd's and timely submitted a claim for insurance benefits pursuant to and under Policy No. HC0011685-1002.

23. In support of his claim, Plaintiff provided to Defendants a copy of the Idabel Police Incident Report filed by Plaintiff, photographs of the lost Collectibles, and participated in an Examination Under Oath.

24. In submitting a claim timely and properly, Plaintiff has fully complied with his obligations as the insured under the terms of Policy No. HC0011685-1002.

25. On November 15th, 2010, Defendant Lloyd's acknowledged receipt of Plaintiff's claim and opened an investigation.

26. In order to conduct its investigation of the loss, Defendant Lloyd's retained McLarens Young International ("McLarens") as a third-party administrator to evaluate and adjust Plaintiff's loss.

27. As part of its initial investigation, Defendant Lloyd's by and through its third party administrator, Mclarens, retained the services of Mr. Brian Maederer to evaluate Plaintiff's loss.

28. Defendants also retained the services of International Investigative Group as private investigators to investigate Plaintiff and/or Plaintiff's loss.

29. On October 14th, 2010, the private investigators returned their report to Defendants showing that Plaintiff had no criminal record and was in good financial standing.

30. On or about March 18th, 2011, with instructions to determine authenticity of the scheduled items, Mr. Maederer provided an estimate of Plaintiff's loss to Defendant placing the value at (or between) $23,000 and $30,000.

31. Within the estimate provided by Mr. Maederer, thirty-six (36) of the forty-four (44) items insured under Policy No. HC0011685-1002 were determined to be inaccurate, inauthentic, copies, or otherwise different than the items insured under the Policy.

32. Despite the scheduled coverage amounts under the Lloyd's policy, many of the items evaluated and adjusted by Defendants McLarens and Lloyd's were given a value of $0.00 (zero).

33. On May 13th, 2011, Plaintiff was advised of Defendant's investigation of his loss and Plaintiff received an offer of $32,500 from Defendants as full valuation of Plaintiff's loss. This offer was based off a "follow up report."

34. The difference in value between the items insured by Plaintiff under Policy No. HC0011685-1002 and the offer submitted by Defendants on May 13th, 2011, was $372,500.

35. In response to Defendants' offer, Plaintiff requested Mr. Maederer's initial evaluation be tendered since the May 13th, offer was based off a "follow up report."

36. On June 20th, 2011, Defendant Lloyd's and McLarens provided Plaintiff a copy of Mr. Maederer's initial report, stating that the follow up report was conducted because the initial report was "incomplete, unclear, and in rough format."

37. The initial report valued the insured items at $250,500. This value did not include items that Mr. Maederer determined to be copies or items for which he "could not tell."

38. Plaintiff deemed Defendant Lloyd's offer of $32,500.00 a denial of his claim, or a "lowball offer" that was made without proper investigation and evaluation of Plaintiff's claim and rejected the offer.

39. Following Plaintiff's rejection of Defendant Lloyd's offer, and even though there was a disagreement as to authentication of the items rather than amount of loss of the scheduled items, on or about August 31st, 2011, Defendants notified Plaintiff that Defendants invoked the appraisal clause of Policy No. HC0011685-1002 and named Mr. Jody Tucker as Defendants' appraiser.

40. Although Plaintiff believed Defendant Lloyd's offer to be a rejection, or lowball offer to his claim, Plaintiff agreed that an appraisal, if performed properly, would act as an efficient vehicle to resolve his claim with Lloyd's.

41.  On September 10th, 2011, Plaintiff identified Mr. Johnson as his appraiser.

42.  Mr. Johnson evaluated the value of Plaintiff's insured items at $441,100 and Plaintiff submitted a copy of Mr. Johnson's report to Defendant Lloyd's.

43.  To date, the respective appraisers have completed separate reports, failed to reach an agreement on the value of Plaintiff's loss, and failed to select a third-party umpire to complete the appraisal process.

44.  The crux of the disagreement between the chosen appraisers relates whether the scheduled collectibles insured by Lloyd's, and for which a claim was made by Plaintiff, were authentitic.

45.  Since the scheduled items were stolen and never recovered, Defendant Lloyd's appraiser based his estimate of the stolen collectibles and the authenticity thereto on the photographs provided by Plaintiff.

46.  Defendant Lloyd's has improperly invoked appraisal in order to avoid paying Plaintiff what he is owed under the policy and have further exceeded the authority granted in the appraisal process by questioning authenticity of the lost Collectibles rather than simply determining the amount of loss.

47.  As a result of Defendant Lloyd's systematic and contrived efforts to avoid paying Plaintiff what he is owed under the policy by failing to properly investigate and evaluate Plaintiff's loss and further hiding behind the appraisal,

Plaintiff was left with no choice but to file the instant lawsuit against Defendants Lloyd's and McLarens.

48. Likewise, shortly after the July 25, 2010 theft of his collectibles, Plaintiff notified Defendant Farmers of his loss.

49. On or about August 2010, and pursuant to Farmers' request, Plaintiff submitted a Proof of Loss to Farmers that described his claim, including the amount of loss.

50. To date, more than eighteen (18) months after Plaintiff's loss, Defendant Farmers has not paid Plaintiff for his loss and has wholly failed to investigate and/or otherwise evaluate and adjust Plaintiff's loss.

51. Rather than performing an evaluation and adjustment of Plaintiff's loss, Defendant Farmers instead invoked the escape clause and denied and/or unreasonably delayed coverage for Plaintiff's loss on the basis that Defendant Farmers was not responsible for primary coverage of Plaintiff's loss.

52. At all relevant times, Defendant Farmers possessed a copy of the Lloyd's policy which contained excess coverage for Plaintiff's loss.

53. Contrary to Defendant Farmers' position on coverage, Defendant Farmers was responsible for primary coverage of Plaintiff's loss.

54. As an insurer doing business in the State of Oklahoma, Defendant Farmers knew or should have known how the provisions in its policy operate and apply to coverage determinations.

55. Defendant Farmers' actions and inaction constitute a breach of contract and breach of the duty of good faith and fair dealing owed to Plaintiff.

56. As a result of the individual and collective actions and inaction of Defendants, Plaintiff has suffered monetary losses, pain and suffering, incurred attorney's fees and costs, and has been prevented from replacing his collectibles or otherwise being made whole.

### FIRST CAUSE OF ACTION: BREACH OF CONTRACT AGAINST LLOYD'S

57. Plaintiff adopts and re-alleges each of the allegations made in the preceding paragraphs as if fully set forth herein.

58. Under the terms of the Policy, Lloyds promised to pay Hester for the loss of covered property due to burglary or theft up to the amount of the aforementioned Policy limit.

59. Lloyds refused or otherwise failed to pay the amount due Hester under the terms of the Policy for the loss of Hester's Collectibles.

60. Lloyds' failure to pay resulted in a breach of the Policy.

61. Hester has suffered damages in excess of $400,000 due to Lloyds' failure to compensate Hester for the loss of Collectibles.

### SECOND CAUSE OF ACTION: BREACH OF INSURER'S DUTY OF GOOD FAITH AND FAIR DEALING AGAINST LLOYD'S

62. Plaintiff adopts and re-alleges each of the allegations made in the preceding paragraphs as if fully set forth herein.

63. Defendant Lloyd's owes Hester a duty of good faith and fair dealing.

64. In order to meet its duty of good faith and fair dealing, Defendant Lloyd's was obligated to properly investigate Plaintiff's claim and pay the amounts determined to be owed.

65. Lloyd's constructively refused to pay Hester's claim by failing to timely pay the claim or offering a compensation amount that was unreasonably low to satisfy the claim, i.e. a lowball offer.

66. Defendant Lloyd's unreasonably low offer was made pursuant to Defendant Lloyd's contention that many, if not all of the collectible items insured by Lloyd's were inauthentic and/or copies and therefore essentially valueless.

67. Lloyd's rendered its determination after reviewing photographs of Plaintiff's collectibles despite documented concerns about the ability to determine authenticity of Plaintiff's collectibles pursuant to a review of photographs.

68. In any event, Lloyd's decision to deny coverage for many of Plaintiff's collectibles constitutes post-claim underwriting.

69. Following Plaintiff's rejection of Defendant Lloyd's unreasonably low offer, Defendant Lloyd's improperly invoked the appraisal clause in furtherance of its efforts to bind Plaintiff to Lloyd's unreasonably low and improper evaluation of Plaintiff's claim.

70. Defendant Lloyd's invoked the appraisal clause and attempted to bind Plaintiff to the appraisal even though the disagreement about the loss centered on authenticity rather than amount of loss of the rare and authentic collectibles insured.

71.     Lloyd's has failed to properly and in good faith consider the full extent of the loss by its insured and has breached its duty of good faith and fair dealing with Plaintiff.

72.     Plaintiff has suffered damages in excess of $500,000 due to Lloyds' violation of the duty of good faith and fair dealing.

73.     The treatment of Plaintiff and the handling of Plaintiff's claims demonstrate Lloyds intentionally, and with malice, breached its duty to deal fairly and in good faith.

74.     Due to the failure of Defendant Lloyd's to reasonably and timely pay the claims of its insured, Defendant Lloyd's should be ordered to pay the value of the claim, pay damages for its bad faith as well as consequential damages, interest, costs and attorney fees and in addition thereto based upon its willful and intentional misconduct which was to the benefit of Defendant Lloyd's it should be punished by means of punitive damages in an amount to be determined by the Jury.

### THIRD CAUSE OF ACTION: BREACH OF CONTRACT AGAINST FARMERS

75.     Plaintiff adopts and re-alleges each of the allegations made in the preceding paragraphs as if fully set forth herein.

76.     Under the terms of the Policy, Farmers promised to pay Hester for the loss of covered property due to burglary or theft up to the amount of the aforementioned Policy limit.

77. Farmers refused or otherwise failed to pay the amount due Plaintiff under the terms of the Policy for the loss of Plaintiff's Collectibles.

78. Farmers' failure to pay resulted in a breach of the Policy.

79. Plaintiff has suffered damages in excess of $111,100.00 due to Farmers' failure to compensate Plaintiff for the loss of Collectibles.

## FOURTH CAUSE OF ACTION: BREACH OF INSURER'S DUTY OF GOOD FAITH AND FAIR DEALING AGAINST FARMERS

80. Plaintiff adopts and re-alleges each of the allegations made in the preceding paragraphs as if fully set forth herein.

81. Defendant Farmers owes Plaintiff a duty of good faith and fair dealing.

82. In order to meet its duty of good faith and fair dealing, Defendant Farmers was obligated to properly and timely investigate Plaintiff's claim and pay the amounts determined to be owed.

83. To date, more than eighteen (18) months after Plaintiff's loss, Defendant Farmers has not paid Plaintiff for his loss and has wholly failed to investigate and/or otherwise evaluate and adjust Plaintiff's loss.

84. Defendant Farmers has invoked the escape clause and denied and/or unreasonably delayed coverage for Plaintiff's loss on the basis that Defendant Farmers was not responsible for primary coverage of Plaintiff's loss.

85. At all relevant times, Defendant Farmers was responsible for primary coverage of Plaintiff's loss.

86. As an insurer doing business in the State of Oklahoma, Defendant Farmers knew or should have known how the provisions in its policy operate and apply to coverage determinations.

87. Farmers has failed to properly and in good faith investigate and evaluate the loss by its insured and has breached its duty of good faith and fair dealing with Plaintiff.

88. Farmers has also knowingly and intentionally misrepresented to its insured the effect of coverage under the Farmers' policy.

89. Plaintiff has suffered damages due to Farmers' breach of the duty of good faith and fair dealing.

90. The treatment of Plaintiff and the handling of Plaintiff's claim demonstrates Farmers intentionally, and with malice, breached its duty to deal fairly and in good faith.

91. Due to the failure of Defendant Farmers to properly and timely investigate and pay the claims of its insured, and the intentional misrepresentation of policy provisions, Defendant Farmers should be ordered to pay the value of the claim, pay damages for its bad faith as well as consequential damages, interest, costs and attorney fees and in addition thereto based upon its willful and intentional misconduct which was to the benefit of Defendant Farmers it should be punished by means of punitive damages in an amount to be determined by the Jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, respectfully prays for judgment against Defendants, Lloyds, and Farmers, for actual and punitive damages in an amount in excess of $75,000.00, for court costs, including attorneys' fees to be set by the Court and taxed and collected as costs pursuant to applicable legal authority, and for such other and further relief, legal or equitable, as may be just and proper.


Jury Trial Demanded!
Attorney Lien Claimed!


                                           Respectfully submitted,

                                           */s/ Kevin H. Cunningham*
                                           Kevin H. Cunningham, OBA #22117
                                           A. Gabriel Bass, OBA #19749
                                           Justin D. Meek, OBA #21294
                                           BASS LAW
                                           201 Robert S. Kerr
                                           10th Floor, Suite 1001
                                           Oklahoma City, OK 73102
                                           405/262-4040
                                           405/262-4058 (fax)
                                           justin@basslaw.net
                                           kevin@basslaw.net
                                           ATTORNEYS FOR PLAINTIFF